### MANLIUS S. CLARKE *vs.* WILLIAM MINOT & others, Executors.

An assignment of the estate of an insolvent debtor, under *St.* 1838, *c.* 163, vests in the assignee only the property, which the debtor could have sold, &c. or which could have been taken on execution against him, at the time of the first publication, in a newspaper, of the issuing of the warrant to the messenger. Therefore, where one is charged as the trustee of such debtor, by a judgment in the trustee process, and pays to the judgment creditor, on execution, the sum with which he is so charged, before such publication of notice, he will be protected against the assignee, although he had personal notice, before payment, of the issuing of such warrant.

ASSUMPSIT to recover $1729·02.

The parties submitted the case to the court on the following facts : The defendants are executors of the last will of Mary Ann May, who, by said will, directed them to pay $2000 to Abby Alcott, upon the death of Joseph May. The plaintiff is assignee of the estate of Amos B. Alcott, the husband of said Abby, under *St.* 1838, *c.* 163.

The estate of said Amos B. was assigned to the plaintiff by the judge of probate for the county of Middlesex, under the following circumstances : After the decease of the abovenamed Joseph May, the amount of said legacy was attached in the hands of the defendants, by a trustee process in favor of a creditor of said Amos B. Alcott, in an action founded upon a demand which was, in its nature, proveable against the estate of an insolvent debtor, under the said statute. Said process was returnable and returned to the court of common pleas for the county of Suffolk, at April term, 1841. The present defendants charged themselves, by their answers in said process, as trustees of said Alcott, by reason of said legacy, and final judgment was rendered therein against said Alcott, as principal, and these defendants, as his trustees, for the sum of $1704·42, and costs, on the afternoon of April 28th 1841 ; being three days before the last day of said term. The said attachment was never dissolved by said Alcott.

After said final judgment was rendered, and on the same day, viz. April 28th 1841, other creditors of said Alcott preferred a petition to the said judge of probate, setting forth the foregoing

facts, and praying that proceedings might be instituted, under said statute, for dividing and distributing said Alcott's estate among his creditors. A warrant was issued to a messenger, by said judge, on the same day, directing him to take possession of said estate, and " forthwith to give public notice, and also to said Alcott's trustees before named," [the defendants] " that a warrant " had issued against his estate, &c. by advertisement thereof, to be published in the Boston Daily Advertiser, a newspaper printed in Boston, three weeks successively, &c. The messenger gave written notice to each of the defendants personally, before 9 o'clock in the morning of April 29th 1841, and within 24 hours after the rendition of the judgment aforesaid, and before any execution had issued thereon, and caused the notification to be published in said newspaper, as directed in the warrant, on the morning of April 30th. In the afternoon of April 29th, execution in said suit against said Alcott, and the defendants, as his trustees, was issued, and the defendants paid to the officer the said sum of $ 1729·02, the amount which is claimed of them in this action.

(Several other facts, which related to the regularity of the proceedings of the judge of probate, &c. were also stated ; but as it became unnecessary for the court to decide the questions arising from those facts, they are not here inserted.)

The parties agreed that " if it is competent in law for the defendants to give in evidence the foregoing facts, or any part thereof ; and if, under the facts which may be so given in evidence, the court should be of opinion that the said attachment was not dissolved, and the payment by the defendants, on execution, as above stated, was proper ; the plaintiff shall become nonsuit : Otherwise, judgment is to be rendered against the defendants for the sum of $ 1729, and costs."

*M. S. Clarke, pro se.*

*W. Minot,* for the defendants.

SHAW, C. J. Several questions have been argued in this case, which it is not necessary to decide. The question is, whether at the time when the assignment to the plaintiff, of the effects of the insolvent, under *St.* 1838, *c.* 163, took effect, so

as to transfer his property and choses in action, the debt and sum of money, in the hands of the defendants, had been so taken on execution, that the assignment did not transfer it ; or whether it was merely attached upon mesne process, so that the insolvent proceedings dissolved the attachment and left the debt to pas⸱ to the assignee, for the general benefit of the creditors.

This question depends upon the provisions of the insolvent law, determining the time at which the assignment shall take effect, so as to divest the property of the insolvent, in his real and personal estate and choses in action, and vest the same in the assignee. This clearly is not the time of the act of assignment, for that is always some time after the commence ment of the proceedings ; and by the terms of the statute, it relates back to an anterior period. One other consideration must be obvious ; which is, that the judge, by such assignment, merely executes a power devolved by law upon him ; he conveys no interest of his own ; the property which passes by it is transferred by force of the statute ; and therefore the legal effect of such transfer depends little upon the terms of the assignment, either as to the property transferred, or the time at which it shall take effect. But the legal effect and operation of the assignment, in these respects, must depend upon the provisions of the statute. It is purely a statute title under which an assignee claims either the goods or choses in action of the insolvent ; and to the statute we must look for the nature and extent of that title.

The question then recurs, to what time does this assignment relate back ? The statute, § 5, thus states it : " Which assignment shall vest in the assignees all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed, or which might have been taken on execution on any judgment against him, at the time of the first publication of the notice of issuing the above-mentioned warrant." This leads directly to the inquiry, what is the time of the first publication thus referred to, and for this we go to the 2d section. The first section having provided for the issuing of a warrant to a messenger to take possession, &c. the

second section provides as follows : " The said messenger shall forthwith give public notice, by advertisement, in such newspapers as shall be designated by the judge, and also such personal or other notice to any persons concerned, as the judge shall prescribe."

It seems to have been the obvious policy of the statute, to fix some precise point of time, at which the whole property and effects of the debtor shall be deemed to have passed from him, and vested in the assignees. The legislature appear to have intended that a time should be fixed, before which all transfers and conveyances of property by the debtor, made in good faith, and not intended to give preferences, shall be valid ; so of all payments in the ordinary course of business, and transfers of property, made without the concurrence of the owner, as by seizure, or levy on execution.

The same time is fixed on for another purpose, in this statute, by § 3, which determines what debts may be proved ; and it provides, that " all debts due and payable from such debtor, at the time of the first publication of the notice of issuing the said warrant, may be proved." It only remains then to ascertain what specific act was intended by these words, " the first publication." The statute having previously directed that public notice should forthwith be given by advertisement in such newspapers, &c. the natural, and, in our opinion, the legal construction is, that it is such notice by advertisement. Whether such notice may be considered as made public by advertisement, when the advertisement, duly signed, is delivered to the printer at the office of publication, with orders to print it in the next paper, or by putting it in type and striking it off on paper, or by the first delivery of one of the newspapers containing it, it is not necessary in this case to decide ; nor, if the latter is required, is it necessary now to decide, whether the publication must await the regular day of publication of the newspaper, or whether it would be a publication by advertisement, within the statute, to anticipate the day of publication, by striking off, issuing and distributing, an extra number of such newspaper. These points are not necessary to the present case, because there is no intimation that

there was any publication by advertisement, before the defendants, as trustees, paid over the amount in their hands, on execution ; but on the contrary the personal notice given to them, before such payment, is relied upon to show that they paid in their own wrong.

Two grounds are relied upon, in the ingenious argument of the plaintiff, to show that such personal notice is sufficient, in a case like the present. The first is, that as the whole subject of the mode of notice is to be directed by the judge and stated in the warrant — personal notice to certain persons named, and advertisements in certain newspapers designated — the duty of giving notice is but one duty, though consisting of several acts, and that the first act done in the performance of this duty — the whole being followed up and done with reasonable diligence — is the first publication. But this seems inconsistent with the terms of the statute : " The messenger shall give public notice by advertisement, and also such personal or other notice," &c. Such personal notice may be private and confidential, and confined to the persons named. Public notice and personal notice, instead of being the same thing, are plainly put in contradistinction to each other. To hold that personal notice to an individual, perhaps one having an interest to conceal it, is a publication of notice, would be putting a construction upon the language, not conformable to its usual meaning, especially when the statute has directed two forms of notice, one of which is to be public.

But such construction seems equally inconsistent with the policy of the statute. We are now seeking to ascertain and fix the point of time intended by the statute as the time at which all the property of the debtor is changed and his power over it suspended ; that point, in other words, prior to which all payments, made by him or to him, all conveyances (not fraudulent) made by him, all seizures, levies and extents of execution upon his property, shall be held valid, and all those, made after, void. It was competent for the legislature to have fixed any other time, as, for instance, the application to the judge, or the act of the judge in issuing the warrant, or the delivery of the warrant to the messenger. Either of these would have afforded security to

the creditors, but might have unjustly interfered with the rights of those who had been dealing with the debtor, in good faith and without notice. The time of first publication was fixed, obviously because that act would, in most cases, afford actual notice to those immediately interested ; and it was intended as constructive notice to all. But no such effect can be attributed to personal notice to one individual.

The other, and we believe the principal ground relied on by the plaintiff, is, that although the time of notice to the defendants was not the time at which all the estate and effects of the debtor vested in the assignee, yet that it bound the property in the defendants' hands, and prevented them from parting with it by paying it on an execution against the debtor. The first serious objection to this view is, that instead of fixing one point of time, at which all the property passes, it may fix various times, according as certain individuals had notice or not. On the same exe cution, for instance, some trustees might have notice, and others not. According to the principle contended for, some would be bound to pay over, and others prohibited. Besides ; to whom shall personal notice be given, to have the supposed effect ? The defendants were mere stake holders ; they were to pay over to any person lawfully entitled. If the officer had no notice of the warrant, and more especially if the creditor, for whom he acted, had none, how was notice to the mere holder of the property to affect their rights ? Suppose the property in the hands of the trustees had been chattels, to be sold on execution, instead of money ; would they not have been bound to expose them ? And if they had so exposed them, might not the officer have lawfully taken them ?

But it is further insisted, as a general rule of law, that when constructive notice is prescribed by statute, in order to give full effect to conveyances, if actual and express notice is shown, as to any individual, it supersedes the necessity of showing such constructive notice in regard to him. This brings us in fact to the precise point of the case. What property passed by this assignment ? The answer is, all that the debtor had at the time of the first publication of notice. But if it had been rightfully

paid away, transferred, or taken in execution, before that time, then it was not his, and the assignment did not reach it. The notice, that the defendants had, was, not that an act had been done, which transferred the property from the debtor, and which only required publication to give it effect ; but that proceedings had · been commenced, which, if followed by a publication of notice and other acts, would transfer the property. This is not the notice contemplated by the rule. The most familiar case is that of the registration of a deed, which is made necessary to secure the estate from being attached as the property of the grantor. But if an attaching creditor has notice that his debtor has conveyed his estate, though the deed is not registered, still he is bound by his actual notice. The reason is, that as between the grantor and grantee, the property has actually passed by the execution and delivery of the deed, and actual notice to him is equivalent to that registration, the purpose of which was, to give him notice. But the fact of which he has notice, in such case, is, that the estate has been actually conveyed. Notice that another is about to obtain a deed, though it is actually obtained, but not registered, before his attachment, does not defeat his attachment. *Cushing* v. *Hurd*, 4 Pick. 253. If the law were, that a deed should have no effect to transfer estate, till in fact registered, then notice of an unregistered deed would not prevent another from attaching. The only difference between that and the present case is this ; that would have a prospective, and this has a retrospective relation. The distinction between this and most of the cases cited is, that in them registration or publication is required merely for the purpose of giving notice of an act, which of itself transfers or affects property. In this case, the publication is necessary to fix a point of time, at which the deed shall take effect, and without which the deed is inoperative. Suppose a debtor should happen to be so situated that he has only five debtors and five creditors, and personal notice is given to all of them, and no public notice is ever given. Could it be maintained, that the mere official assignment under this statute, would pass the property of the debtor to the assignee, and enable

the latter to sue in his own name, and perform all the functions of an assignee under the statute ?

This decision is not, we think, opposed to the case of *Walker v. Gill,* 2 Bailey, 105, cited by the plaintiff, in which the learned judge says, he is "not aware of any instance in which the law requires an act to be done for the purpose of giving notice, and regards the doing of it as implied notice, that the parties concerned will not be affected with express notice." That was an action by a creditor against an administrator, on a demand, of which, by the statute of South Carolina, he should have given notice, within one year after administration taken ; and the defendant, to avoid the effect of the statute, relied on the fact that the plaintiff had actual notice. But the court proceeded on the ground, that publication was not necessary, as a condition, to give effect to the limitation, but, like registration of a conveyance, only to give notice. Had that statute, like ours on the same subject, made the term of limitation commence at the time of giving public notice, actual personal notice to an individual would not have made the statute take effect as to him ; *Emerson v. Thompson,* 16 Mass. 429 ; nor have been a substitute for the publication, which alone can call the statute into effectual operation.

But the distinction is, that the publication under the insolvent act of 1838, although one purpose of publication is to give notice of the proceedings, is not required for the purpose of giving notice of another substantive and efficient act, but is itself the act which gives effect and operation to the subsequent deed of assignment ; fixes the time at which it takes effect ; and without which, such subsequent assignment has no effect to transfer the debtor's property.

*Plaintiff nonsuit.*